## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

KIM BRADLEY ROCK,

                              Plaintiff,                     No. 21-2717 (JRT/BRT)

v.

                                                   **MEMORANDUM OPINION AND ORDER**
                                                   **DENYING MOTIONS TO TRANSFER AND**
RATHSBURG ASSOCIATES, INC.,                                        **DISMISS**

                              Defendant.

Michael Clark Glover, **DEWITT LLP**, 901 Marquette Avenue, Suite 2100, Minneapolis, MN 55402, for plaintiff.

Gina K. Janeiro and Jennell K. Shannon, **JACKSON LEWIS PC**, 150 South Fifth Street, Suite 3500, Minneapolis, MN 55402, for defendant.

Plaintiff Kim Rock filed this action in Minnesota state court against Defendant Rathsburg Associates, Inc. ("Rathsburg") alleging one count of breach of contract, one count of failure to pay wages in violation of Minn. Stat. § 181.13, one count of unlawful retaliation in violation of Minn. Stat. § 181.932, and one count of unjust enrichment. Rathsburg removed the action to this Court and subsequently filed a Motion to Transfer and, alternatively, a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will deny Rathsburg's Motion to Transfer because the relevant factors favor retaining this action in the District of Minnesota. The Court will also deny Rathsburg's alternative Motion to Dismiss because Rock has plausibly alleged a breach of contract claim, Rathsburg is an "employer" for purposes of Rock's statutory claims and

Rock has plausibly alleged that he was owed commission when he was terminated, and Rock's claim for unjust enrichment is plead alternatively to his breach of contract claim.

## BACKGROUND

Rathsburg represents electronic component manufacturers in the sale of their products to other companies who then incorporate the components into their own products. (Compl. ¶¶ 8, 10 Dec. 21, 2021, Docket No. 1-1.) Rathsburg is incorporated in the state of Michigan and has its principal place of business in Novi, Michigan. (Decl. Amy Rathsburg ("Rathsburg Decl.") ¶¶ 3-4, Jan. 11, 2022, Docket No. 11.) Rock is a resident of Wisconsin. (Compl. ¶ 1.)

In March of 2018, Rathsburg offered Rock a position as a Sales Engineer. (Compl. ¶ 7.) Rock accepted the offer and began working for Rathsburg in April of 2018 within the sales territories of Minnesota, North Dakota, South Dakota, and Wisconsin. (Decl. Kim Rock ("Rock Decl.") ¶ 2, Feb. 1, 2022, Docket No 25.) Rock's position required almost exclusively soliciting clients located in Minnesota. (Compl. ¶ 11.) In addition to email and phone communications, Rock would visit his clients in-person one to two times per week. (*Id.*) During the in-person trips, Rock would visit anywhere between one and six customers each day that he was in Minnesota. (Rock Decl. ¶ 5.) Rock estimates that he had contact with approximately three hundred to four hundred companies in Minnesota while working for Rathsburg. (*Id*. ¶ 7.)

When identifying potential clients, Rock would research the company to develop customer contacts and attempt to educate them about Rathsburg's components with the goal of the customers eventually designing the components into their products.  (*Id*. ¶ 3.) Rock would also work with customer procurement associates to identify the necessary supply chain.  (*Id.*)  Rock maintains that the process can take years to develop before a sale is ever closed.  (*Id.*)

Despite the extensive efforts required to make a sale, the Variable Compensation Plan ("VCP") that was attached to Rock's offer of employment provided that his compensation would consist solely of commissions.  (Compl. ¶ 9; Rathsburg Decl., Ex. A.) Under the VCP, commission payments were calculated and paid one month after Rathsburg received revenue resulting from a sale and all commission payments terminated immediately upon the end of the employment relationship.  (Rathsburg Decl., Ex. A.)

During his employment, Rathsburg sent Rock a monthly commission report recounting sales and commissions paid originating from his territories.  (Rock Decl. ¶ 11.) Rock alleges that these monthly commission reports show that eighty to ninety percent of his sales were based in Minnesota.  (*Id.* ¶ 12.)  According to Rock, Rathsburg's customer relationship management software also reflected over $8,000,000 of business attributable his efforts.  (*Id.* ¶ 13.)

Although commissions were significantly more important than normal under the VCP, Rock claims that Rathsburg often failed to invoice customers on a timely basis or failed to claim its commission from the component manufacturers and created a substantial backlog of payable commissions.  (Compl. ¶ 18.)  According to Rock, this caused sales representatives to be paid slowly, or not at all, for commissions which were earned anywhere from months to years earlier.  (*Id.* ¶ 19.)

On May 6, 2021, Rock spoke to Danny Kin, a Rathsburg employee who worked with clients on commissions payable, about the delayed, or non-existent, commission payments.  (*Id.* ¶ 20.)  Later the same day, Rathsburg terminated Rock's employment because it was taking Rock's territory "in a different direction."  (*Id.* ¶ 21.)  Rock asserts that his employment was terminated for the purpose of denying his earned commissions and because he had discovered Rathsburg's compensation practices.  (*Id.* ¶ 22.)

At the time of his termination, Rock claims that Rathsburg had signed contracts from his customers that either have, or will, generate commissions for Rathsburg in the approximate amount of $400,000 on approximately $8,000,000 of sales and that Rock would be entitled to approximately $160,000 in commissions.  (*Id.* ¶ 23.)

Rock initiated this action in Hennepin County District Court on November 8, 2021.  (*See* Compl.)  On December 21, 2021, Rathsburg removed the action to this Court.  (Notice of Removal, Dec. 21, 2021, Docket No. 1.)  Before answering, Rathsburg filed the current

alternative motions.  (Mot. Transfer, Jan. 11, 2022, Docket No. 8; Mot. Dismiss, Jan 11.

2022, Docket No. 14.)

DISCUSSION

I.    **MOTION TO TRANSFER**

A.  **Standard of Review**

When deciding a motion to transfer, courts consider (1) the convenience of the

parties, (2) the convenience of the witnesses, and (3) the interests of justice, and may

balance a number of case-specific factors.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988).  The moving party "must show that the balance of these factors strongly favors

transfer."  *Luckey v. Alside, Inc.*, No. 15-cv-2512, 2016 WL 1559569, at *4 (D. Minn. Apr.

18, 2016) (quotation omitted); *see also Advanced Logistics Consulting, Inc. v. C. Enyeart*

*LLC*, No. 09-cv-720, 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (noting that the

movant bears a "heavy" burden).  Ultimately, the decision to transfer a case is committed

to the discretion of the district court.  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688,

691 (8th Cir. 1997).

B.  **Analysis**

Rathsburg argues that this case should be transferred to the Eastern District of

Michigan—where Rathsburg resides—or to the Western District of Wisconsin—where

Rock resides.  The Court, therefore, must determine whether the balance of relevant

factors weighs strongly in favor of transfer to either district.

1.  **Convenience of the Parties**

When considering the convenience of the parties, courts give "considerable deference" to a plaintiff's forum choice.[1] *Terra Int'l, Inc.*, 119 F.3d at 695. Courts also assess "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of the witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Id.* at 696. The transferee forum must be a more convenient forum rather than "a forum likely to prove equally convenient or inconvenient." *Graff v. Qwest Commc'ns Corp.*, 33 F.Supp.2d 1117, 1121 (D. Minn. 1999). Therefore, a transfer should not be granted "if the effect is simply to shift the inconvenience" from one party to the other. *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

Neither the Eastern District of Michigan nor the Western District of Wisconsin are more convenient forums. Although a transfer to the Western District of Wisconsin initially appears more convenient because Rock is a Wisconsin resident and the Western District of Wisconsin is closer to Rathsburg's headquarters, Rock's home city—Hudson, Wisconsin—is approximately twenty-eight miles from the courthouse in Minneapolis and

---

[1] However, a plaintiff's choice of forum is afforded less deference "when the plaintiff does not reside in the selected forum, or when the underlying events did not occur in the chosen forum." *Jacques v. Dakota, Minn. & E. R.R. Corp.*, No. 07-248, 2008 WL 835651, at *1 (D. Minn. Mar. 27, 2008) (citing *Nelson v. Soo Line Ry. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999)).

even closer to the courthouse in St. Paul.  Conversely, Rock's residence is two hundred fifty miles from the Western District of Wisconsin courthouse in Madison, Wisconsin.  At best, a transfer to the Western District of Wisconsin is equally convenient, and more likely, is far more inconvenient for Rock.  Thus, the convenience of the parties does not weigh strongly in favor of transfer to Wisconsin.

Similarly, transferring this action to Michigan would, at best, only be equally as convenient as Minnesota.  The distance from Hudson, Wisconsin to Detroit, Michigan is roughly the same distance as Novi, Michigan to Minneapolis, Minnesota.  Transferring this action to Michigan would be equally convenient at best, and more likely shifts the inconvenience from Rathsburg to Rock.  Therefore, the convenience of the parties does not support granting Rathsburg's motion to transfer.

### 2. Convenience of the Witnesses

When considering the convenience of the witnesses, the number of witnesses in each forum may be a factor but is not dispositive.  *Terra Int'l, Inc.*, 119 F.3d at 696. Moreover, courts assume that employees of the parties will voluntarily appear in a foreign forum and focus on the convenience to non-party witnesses.  *Advanced Logistics Consulting,* 2009 WL 1684428, at *5; *see also Luckey,* 2016 WL 1559569, at *5.

Rathsburg has identified ten anticipated witnesses—Rachel Rathsburg, Bob Rathsburg, Amy Rathsburg, Daniel Kin, Jeff Mauck, Anthony, Garvert, Darryl Rivera, Eric Forrester, Wallace Brown, and Rock.  (Mem. Supp. Mot. Transfer at 7–8, Jan. 11, 2022,

Docket No. 10.)  Notably, nine of the ten witnesses are Rathsburg employees, and the tenth is Rock.  Because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum," the convenience of party witnesses is not at the forefront of the Court's considerations. *Austin v. Nestle USA, Inc.,* 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009) (cleaned up). Further, Rock has identified at least three preliminary non-party witnesses that reside in Minnesota.  (Pl.'s Mem. Opp. Mot. Transfer at 8, Feb. 2, 2022, Docket No. 24.)  On balance, the Court is not persuaded that the convenience of the witnesses strongly weighs in favor of transfer.

### 3.  Interest of Justice

The Court must also consider whether a transfer would promote the interest of justice.  When considering the interest of justice, the Court may take into account a broad range of factors such as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of laws, and (7) the advantages of having a local court determine questions of local law.  *Terra Int'l,* 119 F.3d at 696.

First, because Rock is not a resident of Minnesota his choice of forum is afforded less deference.  *Nelson,* 58 F. Supp. 2d at 1026.  However, Rock's case has significant connections to Minnesota.  Rock has alleged that Minnesota was his sales territory, that eighty to ninety percent of his compensation came from sales based in Minnesota, that

-8-

he had contact with three hundred to four hundred companies in Minnesota, and that his duties required regular and substantial visits to Minnesota.  Minnesota appears to be the epicenter for Rock's work and is certainly more central to his work than either Wisconsin or Michigan.  Even accounting for the fact that Rock's choice is afforded less deference, the Court is not persuaded that it should override his choice of forum.

Second, the Court is not convinced that Rathsburg's additional cost of litigating in Minnesota warrants transfer.  As previously noted, litigating in any of the proposed alternative forums would likely significantly increase the burden on Rock.  Shifting the burden of litigating from Rathsburg to Rock via transfer would not be appropriate, and the interests of justice weigh against transfer.

Third, it is desirable for Minnesota courts to determine issues of Minnesota law. *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) ("There is an appropriateness in holding trial . . . in the venue that is at home with the state law that must govern the case.") (cleaned up).  Because Rock's claims are based upon Minnesota law, the interests of justice weigh in favor of retaining this action and against transferring it to another district.

Accordingly, Rathsburg has not met its heavy burden to establish that the balance of all the relevant factors strongly favor transfer.  Therefore, the Court will deny Rathsburg's motion to transfer.

-9-

II.   **MOTION TO DISMISS**

A.   **Standard of Review**

In reviewing a Federal Rules of Civil Procedure Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8ᵗʰ Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id*. (internal quotation marks omitted).

B.  **Analysis**

1.  **Breach of Contract**

To plead a breach of contract claim, a plaintiff must plead sufficient facts to show: 1) an agreement was formed; 2) the plaintiff performed any conditions precedent to the

plaintiff's demand of performance by the defendant; and 3) the defendant breached the contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

Rathsburg argues that Rock's breach of contract claim must be dismissed because, even assuming that there is a contract,[2] Rock has not pled facts supporting that he performed all conditions precedent or facts supporting the claim that Rathsburg breached the contract.

A condition precedent "calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." *Lake Co. v. Molan*, 131 N.W.2d 734, 740 (Minn. 1964). "If the event required by the condition does not occur, there can be no breach of contract." *451 Corp. v. Pension Sys. for Policemen & Firemen*, 310 N.W.2d 922, 924 (Minn. 1981).

The VCP provides that "Commission Payment will be calculated and paid to the Sales Engineer one month after company commission revenue is received" and that "[a]ll commission payments terminate immediately upon dissolution of the employment relationship.  No commission payments will be made after the employee leaves the company, either by resignation or termination."  (Rathsburg Decl, Ex. A.)  Therefore, (1)

_____

[2] The parties' briefing disputed whether the offer letter and the incorporated VCP established a contract requiring Rathsburg to pay Rock commission.  However, Rathsburg acknowledged at the hearing on this motion that they are willing to assume that the VCP is a contract for the purpose of a motion to dismiss.  Accordingly, for purposes of this Order, the Court will assume that the first element has been established.

Rathsburg must have received revenue and (2) Rock has to be employed in order for Rathsburg to owe Rock a commission under the VCP.

Rathsburg first contends that Rock has not alleged that it received any revenue and erroneously emphasizes that the contracts he procured entitle him to commissions. While Rathsburg is correct that Rock repeatedly asserts that the contracts he procured entitle him to commission payments, he expressly alleges that "[t]hose contracts **have**, or will, generate substantial commission for Rathsburg in the approximate amount of $400,000.00 on approximately $8,000,000.00 of sales." (Compl. ¶ 23 (emphasis added).) Although the amount is uncertain, Rock clearly alleges that Rathsburg has received revenue from the contracts he procured sufficient to satisfy the first condition precedent to receiving commission payments.

Rathsburg alternatively argues that Rock is not entitled to any commission payments because he is no longer employed. Notably though, the VCP's provisions appear to be the complete antithesis of Minn. Stat. § 181.13—the statute supporting Rock's claim for unpaid wages—which states in relevant part that "[w]hen any employer . . . discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due . . . upon demand of the employee." Minn. Stat. § 181.13(a). Under Minnesota law, "[i]t is well established that contract provisions which conflict with statutory law 'or the well clarified and clearly expounded rules set forth by judicial decision' will not be enforced." *AMCO Ins. Co. v.*

-12-

*Lang*, 420 N.W.2d 895, 900 (Minn. 1988) (citing *Wm. Lindeke Land Co. v. Kalman*, 252 N.W. 650, 652 (Minn. 1934)).

Without deciding the issue, the Court is sufficiently persuaded that the VCP's provision terminating Rock's right to earned commission may be contrary to Minnesota law and unenforceable.  If unenforceable, then Rock has sufficiently alleged he has met all conditions precedent.  Accordingly, Rock has plausibly alleged a breach of contract claim and the Court will deny Rathsburg's motion.

### 2. Statutory Claims

#### a. Unpaid wages and unlawful retaliation

Rathsburg next seeks to dismiss Counts II and IV of Rock's Complaint which allege violations of Minnesota statutes §§ 181.13 and 181.932 for unpaid compensation and unlawful retaliation because Rathsburg argues it is not an "employer" under either statute.

Both Minn. Stat. §§ 181.13 and 181.932 apply to a Minnesota "employer."  Minn. Stat. § 181.13 ("When any employer . . . discharges an employee"); Minn. Stat. § 181.932 ("An employer shall not discharge . . . .").  Minn. Stat. § 181.171 subd. 4 defines an "Employer" as "any person having one or more employees in Minnesota" for purposes of applying Minn. Stat. § 181.13.  Similarly, Minn. Stat. § 181.931 defines "Employer" as "any person having one or more employees in  Minnesota" for purposes of Minn. Stat. §

181.932. "Employee" is defined as a person who performs services for hire in Minnesota.

Minn. Stat. § 181.931, subd. 2.

Rathsburg argues that it is not an employer under the statutes' definitions because Rock is a Wisconsin resident and Rathsburg therefore does not have any Minnesota employees.   However, residency is not a requirement of the statutory definition of an "employee."   Instead, "employee" enjoys a broad statutory definition. *Krutchen v. Zayo Bandwidth Ne., LLC*, 591 F. Supp. 2d 1002, 1012 (D. Minn. 2008).   For example, the court in *Krutchen* determined that someone who was employed in Pennsylvania but was on vacation in Minnesota and was told by his supervisor that he was expected to work from Minnesota at the time of his termination was appropriately considered an employee under the statutory definition.   *Id.*   More broadly, courts have also determined that a plaintiff who visited the Minnesota office of his employer only once fit within the definition.   *Kozloski v. Am. Tissue Servs. Found.,* No. 06-cv-295, 2007 WL 2885365, at *3 n. 8 (D. Minn. Sept. 27, 2007).

Rathsburg argues that concluding it is an employer could result in a slippery slope requiring companies who attempt to conduct business in states throughout the country to be subject to employment laws of each of those state.   Yet, this exact argument was explicitly rejected in *Krutchen*.   The *Krutchen* court disagreed that "a sales representative sunning herself in Cabo San Lucas [would be] protected by Mexican law" because Minnesota law only applies to Minnesota employers and employees and does not

attempt to afford employees the protections of other jurisdictions' laws.  *Krutchen*, 591 F. Supp. 2d at 1013.  The court further clarified that a person is not considered an "employee" unless they allege "significant additional employment-related connections to Minnesota."  *Id*.

Here, Rock has significantly more employment-related connections than the parties in either *Krutchen* or *Kozloski.*  Rock has alleged that his sales territory included Minnesota, that he had contact with three hundred to four hundred potential customers in Minnesota, spent an average of two days per work week soliciting customers in Minnesota, and that eighty to ninety percent of his commission came from Minnesota. Rock has therefore alleged sufficient significant employment related connections to Minnesota to be an "employee" which, in turn, means that Rathsburg also meets the definition of "employer."

Rathsburg alternatively contends that Rock cannot maintain his claim for unpaid wages under Minn. Stat § 181.13 even if it is an "employer" because the VCP terminated his right to commission payments when the parties' employment relationship ended.  To recover under Minn. Stat § 181.13, "the employee must establish an independent substantive legal right, separate and distinct from the [the statute] to the particular wage claimed."  *Karlen v. Jones Lang LaSalle America, Inc.,* 766 F.3d 863, 867-68 (8th Cir. 2014) (quoting *Caldas v. Affordable Granite & Stone, Inc.,* 820 N.W.2d 826, 837 (Minn. 2012)). In addition, Minn. Stat § 181.13 only applies to a commission owed to the discharged

employee at the time of termination and does not mandate "'*what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee.'"  *Id.* at 867 (quoting *Knutson v. Schwan's Home Serv., Inc.,* 711 F.3d 911, 917 (8th Cir. 2013) (emphasis in original)).  It is the "employment contract [which] governs whether wages were 'actually earned and unpaid' for purposes of Minn. Stat. § 181.13."  *Id.* (quoting *Chambers v. Travelers Co.*, 668 F.3d 559, 566 (8th Cir. 2012)).

As noted *supra* (II)(B)(1), it is plausible that the VCP provision terminating commission payments is unenforceable and it would therefore be improper to dismiss Rock's claim for unpaid wages on this basis.  Regardless, Rock has stated a plausible claim because the VCP is silent concerning when a commission is **earned**.  Under the VCP, "Commission Payment will be calculated and paid to the Sales Engineer one month after company commission revenue is received."  (Rathsburg Decl, Ex. A.).  If the receipt of revenue is sufficient to trigger the calculation and payment of a commission, the commission is necessarily earned either contemporaneously or at some other previous point.  Because Rock's Complaint alleges that the contracts he procured have resulted in revenue for Rathsburg and that Rathsburg's allegedly untimely practices delayed or prohibited payment of commissions earned months or years earlier, it is possible that Rock previously earned commissions that were not paid when he was terminated and has therefore stated a plausible claim under the statute.

-16-

Accordingly, the Court will deny Rathsburg's motion to dismiss Rock's claims for unpaid wages and unlawful retaliation.

### 3. Unjust Enrichment

Rathsburg lastly contends that when Count III for unjust enrichment states that it "restates [the] previous allegations and incorporates them herein by reference," (Compl., ¶ 35), it expressly incorporated Rock's claim for breach of contract. According to Rathsburg, Rock's breach of contract claim and unjust enrichment claim are therefore not plead in the alternative and cannot coexist.

Rule 12(d)(2) of the Federal Rules of Civil Procedure permits parties to plead inconsistent counts in the alternative. "However, claims for breach of contract and unjust enrichment are mutually exclusive, and a party seeking relief for conduct that is governed by a contract cannot succeed on an unjust enrichment claim." *Hampton v. Kohler,* No. 18-cv-541, 2018 WL 3076018, at *2 (D. Minn. June 21, 2018) (citing *Roth v. Life Time Fitness, Inc.,* No. 15-3270, 2016 WL 3911875, at *3 (D. Minn. July 14, 2016)). In *Hampton,* the plaintiff explicitly "argue[d] that his unjust enrichment claim [was] pled in connection with his breach of contract claim" and the court concluded that "[t]here is nothing in any pleading to suggest that the parties' rights will not be governed by the applicable agreements" and that the "claim appear[ed] to amount to an equitable claim based upon a contract claim." *Id*.

Here, Rock has not argued that his unjust enrichment claim is pled in connection with the VCP and has expressly represented that he is pleading in the alternative.  It is apparent to the Court, and likely to Rathsburg, that Rock is pleading this claim in the alternative and the Court will deny Rathsburg's motion to dismiss Rock's unjust enrichment claim.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Transfer [Docket No. 8] is **DENIED;**

2.  Defendant's Motion to Dismiss [Docket No. 14] is **DENIED.**

DATED:  September 23, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge

-18-